IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-15626 SR |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| PLAINTIFF(S) vs. | : |
| HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. | : |
| DEFENDANT(S) | : ADVS. NO. 08-350 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**<u>Introduction</u>**

Before the Court is the Defendant HSBC's Motion to Dismiss the Plaintiffs' Amended Complaint. The Plaintiffs oppose the motion. Briefs were submitted. A hearing on the matter was held on April 2, 2009. The Court next took the motion under advisement. For the reasons set forth below, the Motion will be granted in part and denied in part.[1]

---

[1] As this matter involves the determination of the validity, extent or priority of a lien, it is a core proceeding within this Court's jurisdiction. 28 U.S.C. § 157(b)(2)(K)

**Factual Allegations**

The Amended Complaint asserts causes of action under the federal Truth in Lending Act[2] and the Pennsylvania common law of contract. The following is alleged: In the Summer 1998 the Plaintiffs refinanced an existing mortgage.[3] ¶¶ 9-13. The lender for the refinancing was Gelt Financial. ¶ 12. The loan amount was $32,800. *Id*. Settlement charges paid to Gelt and a mortgage broker were equal to 9.98% of the loan amount. ¶ 18. Those fees made the loan a "high cost" mortgage loan pursuant to the Home Owners Equity Protection Act (HOEPA).[4] ¶ 19. As a result, the Plaintiffs were required to have received certain disclosures regarding the high cost of their new loan. It is alleged that they did not. ¶ 20.

Some time later, the loan was assigned to HSBC. ¶ 21. In July 2006, the Plaintiffs defaulted on the loan and HSBC obtained a judgment in foreclosure. ¶¶ 24, 25. On September 4, 2008, a sheriff's sale was stayed by the Debtors' bankruptcy filing.  ¶ 28. On September 11, HSBC filed a secured proof of claim. ¶ 29. That claim is alleged to contain an improperly calculated interest component as well as other unauthorized charges. ¶¶ 50-51.

**Causes of Action**

From these allegations, the Amended Complaint pleads six counts. Count I

---

[2] 15 U.S.C. § 1601 et seq.

[3] That this is a refinance as opposed to a purchase money loan matters: the Plaintiffs allege that this is a "high cost," or HOEPA loan. *See* 15 U.S.C. § 1639. The ramifications which flow from that do not apply to purchase money mortgages. *See, id.*

[4] TILA devotes a separate section to these loans. *See* 15 U.S.C. § 1639.

seeks to determine the extent of the HSBC lien.  Dismissal is not sought as to that count.

Counts II through IV allege various violations of TILA.  Therein, it is alleged that Gelt failed to disclose that this was a "high cost" HOEPA loan (Count II); that HSBC has been improperly amortizing the loan (Count III); and that Gelt failed to provide other disclosures to the Plaintiff (Count IV).  Liability on HSBC's part is based on its status as assignee of the loan.

Count V alleges that HSBC's Proof of Claim contains unauthorized interest and other charges.  As a result, it should be disallowed to that extent.

Count VI alleges a common law breach of contract based on the same allegations regarding the calculation of interest on the loan.  It seeks an accounting and re-application of all payments consistent with the loan terms.

**Grounds for Objection**

HSBC's motion does not challenge the legal sufficiency of *what is pleaded* in the Amended Complaint.  Rather, HSBC's challenge is based on affirmative defenses.  First, it argues that the foreclosure judgment precludes the TILA claims under the doctrine of res judicata.  Second, even assuming the claims could be raised, HSBC maintains that they are ineffective against it because it is an assignee and not the original lender.  *See generally* HSBC's Brief.

**Relief Requested**

HSBC requests alternative relief.  First, it asks the Court to dismiss all counts except for Count I.  If the record does not support that, then HSBC asks the Court to

dismiss Count IV entirely and to dismiss Counts II and III to the extent that they seek attorneys fees and costs.

**Plaintiffs' Response**

Plaintiffs dispute that res judicata applies because, they argue, their claims could not have been raised in the context of foreclosure. They explain that foreclosure involves an *in rem* proceeding while consumer lending claims proceed *in personam*. Plaintiffs' Brief, 5-11. Likewise, they allege that HSBC's assignee status is irrelevant. *Id*. 12  They explain that this is a "high cost" mortgage loan as defined by TILA. *Id.* Such a loan makes the assignee as liable as the lender for TILA violations. *Id*. 13.

**Mortgage Foreclosure,
TILA and Res Judicata**

The Court first takes up HSBC's argument that the TILA claims are barred by the state court foreclosure judgment. Because that judgment has not been set aside or otherwise altered, HSBC argues, Plaintiffs are bound by it under the doctrine of res judicata. HSBC's Brief, 3-5.

Federal courts are required to give state court judgments the same full faith and credit to which they would be entitled under state law. 28 U.S.C. § 1738; *In re Graves*, 33 F.3d 242, 247 (3d Cir.1994); *Allegheny International, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir.1994). Implicit in this deference is the application of principles of preclusion. But "[w]hile federal common law has developed its own set of preclusion principles, if the decision allegedly precluding a later action was issued by a state court, then the federal courts must apply the preclusion principles developed by

that state." *In re Randall*, 358 B.R. 145, 164 (Bankr.E.D.Pa. 2006) *citing Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988)  Under Pennsylvania law, claim preclusion, or res judicata, holds that " a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." *Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n*, 468 Pa. 85, 91, 360 A.2d 191, 194 (1976)  Application of the doctrine requires: (1) identity of the thing sued for; (2) identity of the cause of action: (3) identity of persons and parties to the action ; and (4) identity of the capacity of the parties suing or being sued.  *City of Pittsburgh v. Zoning Bd. of Adjustment,* 522 Pa. 44, 54, 559 A.2d 896, 901 (1989)

## Judgment By Default

The Court begins by reviewing the circumstances surrounding the state court judgment.  It is stressed that the foreclosure judgment was entered by default.  Amended Complaint, ¶ 25.  That fact, however, does not affect the application of res judicata. Unlike *issue* preclusion, *claim* preclusion does not require actual litigation of the merits of the claim.  *See Randall*, *supra*, 358 B.R. at 165 *quoting Zimmer v. Zimmer*, 457 Pa. 488, 490-491, 326 A.2d 318, 320 (1974).  A default judgment, then, will have the same preclusive effect as a ruling on the merits.

## Scope of Mortgage
## Foreclosure Proceeding

HSBC insists that Plaintiffs were required to bring their TILA claims in the foreclosure proceeding.  This implies a belief that such claims were compulsory counterclaims.  There is, however, no compulsory counterclaim rule in Pennsylvania.

5

*See* Pa.R.C.P. 1031 (stating that as a general matter a litigant "may" raise a counterclaim in response to complaint); *see also In re Soto*, 221 B.R. 343, 357 (Bankr.E.D.Pa.1998)

For this Court, the question is not whether the Plaintiffs were *required* to bring their TILA claims in state court, but whether they were *entitled* to at all. As Bankruptcy Judge Fox of this Court has explained:

> In Pennsylvania, the invocation of res judicata "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *R/S Financial Corp. v. Kovalchick,* 552 Pa. 584, 588, 716 A.2d 1228 (1998); *see, e.g., Balent v. City of Wilkes-Barre,* 542 Pa. 555, 564, 669 A.2d 309 (1995). Conversely, claim preclusion is not applied to claims that could not have been previously litigated. *See Dithridge House Ass'n v. Com., Dept. of Environmental Resources,* 116 Pa.Cmwlth. 24, 33, 541 A.2d 827 (1988).

*Randall*, 358 B.R. at 166.

In Pennsylvania, the scope of a foreclosure action is limited. *Id.* at 156-157. The applicable rules of procedure set forth what must be pleaded in a foreclosure case. *Id.* citing Pa.R.C.P. 1147. Counterclaims in foreclosure actions are limited to claims which "arise[] from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa.R.C.P. 1148. Based on these specific rules of procedure, Pennsylvania courts have ruled that a defendant may not raise TILA as a counterclaim in a mortgage foreclosure action. *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 430, 524 A.2d 951, 953 (1987); *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 126-127, 530 A.2d 919,

925 (1987). In *New York Guardian* the Court explained that the interjection of a TILA counterclaim was incompatible with the foreclosure proceeding because the TILA claim was *in personam* in nature, whereas the foreclosure action was strictly *in rem.* 362 Pa.Super. at 430-31, 524 A.2d at 953. Indeed, on more than one occasion this Court has previously ruled on that very question, consistent with the holding of *New York Guardian*. *See In re Apaydin,* 201 B.R. 716, 721 (Bankr.E.D.Pa.1996) (holding that TILA claims not raised in response to foreclosure may be raised in subsequent litigation); *see also In re Faust*, 353 B.R. 94, 102-103 (Bankr.E.D.Pa.2006) (same) Other courts within this District have held likewise. *See Randall*, *supra*, 358 B.R. at 166; *In re Reagoso*, 2007 WL 1655376 *4 (Bankr.E.D.Pa.)

There is no reason the foregoing result does not obtain here. The state court proceeding determined rights in property (*in rem* relief) while the pending matter requests an award of damages against a defendant (in personam) albeit *via* recoupment. The latter action could not have been raised in response to foreclosure. As a result, the Plaintiffs' TILA claims are not precluded by res judicata.

**Rooker-Feldman**

In its Reply Brief, HSBC added the argument that if this Court were to hear the TILA claims, then it would violate the *Rooker-Feldman* doctrine. *See* HSBC Reply Brief, 2-3. That doctrine bars a lower federal court from review of a state court decision.[5]

---

[5]That doctrine derives from two Supreme Court Opinions: *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486-487, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

*See Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir. 1998) Specifically, a claim is barred if (1) the federal claim was actually litigated in state court prior to the filing of the federal action or (2) if the federal claim is inextricably intertwined with the state adjudication meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir.2005). In assessing whether a claim was "actually litigated" in state court, the court must look to the substance of the claims adjudicated in the state court compared to the plaintiff's claims in the federal action. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 364 F.3d 102, 105 (3d Cir.2004), *rev'd on other grounds,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). A federal claim is "inextricably intertwined" with the state court adjudication "when ... the federal court must take an action that would negate the state court's judgment" *See Knapper*, 407 F.3d at 581  The *Rooker-Feldman* doctrine is grounded in principles of federalism and designed to serve two primary functions:  It furthers the interest of finality in court decisions, and ensures that federal courts show proper respect for their state counterparts. *See Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993).

HSBC maintains that *Rooker-Feldman* is implicated not because the TILA claims were already heard, but because they would undermine the validity of the state court judgment.  Reply Brief, 2 quoting Amended Complaint, ¶¶ 2,3.  That statement is misleading.  While the complaint's jurisdictional basis explains that Plaintiffs seek to determine the "validity, amount and extent" of a secured claim, the validity of the HSBC

lien is not challenged. A review of the substance of the pleading reveals that the Plaintiffs seek only to reduce the amount of the secured claim via recoupment. For that reason, the *Rooker-Feldman* doctrine is not implicated here.

### TILA, HOEPA and Assignee Liability

HSBC's second argument assumes that even if the TILA claims were preserved, its assignee status shields it from liability. *See* Motion to Dismiss, ¶¶ 12, 13. Plaintiffs respond that because the loan in question was a "high cost" mortgage loan, HSBC is equally liable. Plaintiffs' Brief, 12-16.

As a general matter, assignees of loans under TILA take loans free of TILA claims which are not readily apparent from the disclosure documents. *See* 15 U.S.C. § 1641(a); *see also* 15 U.S.C. § 1641(e) (providing that in the case of a loan secured by real estate, the assignee's duty to inquire as to defects is limited to certain documentation) But that is not the case with regard to *all* mortgage loans. Subsection (d) of § 1641 explains that:

> Any person who purchases or is otherwise *assigned a mortgage within referred to in section 1602(aa)* of this title shall be *subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless* the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title.

15 U.S.C. § 1641(d)(1). The assignee of a mortgage loan defined under § 1602(aa)

9

bears the same liability as that of the original lender, regardless of what appears on the TILA disclosure documents. It can avoid liability only by *proving* that it could not have discovered that the instrument was a high cost mortgage loan. *See Thomas v. Wells Fargo Bank, N.A.*, 2008 WL 5412113 *5 (Bankr.E.D.Pa.); *McMaster v. CIT Group/Consumer Finance, Inc.*, 2006 WL 1314379 *6 (E.D.Pa.); *Kane v. Equity One, Inc.*, 2003 WL 22939377 *5 (E.D.Pa.); *Harvey v. EMC Mortgage Corp.*, 2003 WL 21460063 *4 (Bankr.E.D.Pa.). The reason for the different treatment is reflected in the legislative history:

> By imposing assignee liability, the Committee seeks to ensure that the High Cost Mortgage market polices itself. Unscrupulous lenders were limited in the past by their own capital resources. Today, however, with loans sold on a regular basis, one unscrupulous player can create havoc in a community by selling loans as fast as they are originated. Providing assignee liability will halt the flow of capital to such lenders.

S. Rep. 103-169, *reprinted in* 1994 U.S.C.C.A.N. 1881 at 1912.

## Criteria of a HOEPA Loan

The key issue for the Court to determine here is whether the Plaintiffs have pleaded that their loan is a HOEPA loan. If the Amended Complaint does that, then it matters not at the pleading stage that HSBC is an assignee. The Court begins with the definition of a HOEPA loan:

> (aa)(1) A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, …if–
> …
> (B) the total points and fees payable by the consumer at or

>    before closing will exceed the greater of–
>
>    (i) 8 percent of the total loan amount; or
>
>    (ii) $400.

15 U.S.C. § 1602(aa)(1).[6] The Amended Complaint alleges that the "total loan amount" is $32,800. Eight percent (8%) of that equals $2,624. If the "points and fees" alleged to have been charged by Gelt exceed that amount, then the Amended Complaint has pleaded a HOEPA loan. Regulation Z goes on to define "[p]oints and fees" as, among other things:

>    (i) All items required to be disclosed under § 226.4(a) and
>    *226.4(b)*, except interest or the time-price differential;
>
>    (ii) *All compensation paid to mortgage brokers*;

12 C.F.R. § 226.32(b)(1) (emphasis added)  The regulation's incorporation of § 226.4(b) refers to examples of a "finance charge." That includes "points and loan fees." 12 C.F.R. § 226.4(b)(3). The Amended Complaint lumps together the amounts paid to the lender (loan fees, or "points") with what was paid to the mortgage broker. The total amount paid to the two entities is alleged to equal 9.98% of the loan amount, or $3,273.44. Taken as true — which they must be at this stage of the proceedings — these allegations establish that these costs alone exceed the $2,624 threshold. That is

---

[6] The corresponding agency regulation was drafted by the Federal Trade Commission and is referred to as "Regulation Z." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).  Where there is an inconsistency between an agency regulation and the statute, it is the regulation which controls. *Id.* In this instance, Regulation Z provides the same definition as to what constitutes a high cost, HOEPA loan as is found in the TILA statute. *See* 12 C.F.R. § 226.32(a)(1)(ii). There is no need, then, to cite both the statute *and* the regulation.

sufficient to state that this loan is a "high cost" loan under HOEPA. As a result, any claim on HSBC's part that it is an assignee of the original lender is irrelevant to the question of whether a claim has been stated against it.[7]

**Liability of Assignee**
**for Fees and Costs**

As an alternative, limited form of relief, HSBC's Motion asks the Court to disallow any recovery of attorneys fees or costs.[8] Motion to Dismiss, ¶ 11. Two reasons are offered for this. First, HSBC argues that such relief is available only as to a "creditor" and not an "assignee." Relying on the *definition* of "creditor" in TILA § 1602, and the *liability* of a "creditor" in § 1640, HSBC argues that as an assignee, it is not liable for Gelt's alleged TILA violations. HSBC Brief, 5-6. Alternatively, it argues that while some assignees may be liable for the violations of original lenders, innocent assignees are not. *Id.* 6-7

This first argument is wholly without a basis in authority. It disregards § 1641 which deals with assignee liability under TILA. As stated, *supra*, the assignee may be just as liable as the creditor. *See* 15 U.S.C. § 1641(a), (d) and (e). If liability is found, then § 1640 awards attorneys fees and costs against the culpable assignee. There is simply no differentiation between creditors and assignees as far as *relief* is concerned.

---

[7]Whether HSBC can later prove that it had no knowledge of the high cost nature of this particular remains to be seen. However, at the pleadings stage, that question is premature.

[8]The TILA damages provides in its section regarding damages that "[i]in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court" shall be awarded. 15 U.S.C. § 1640(a)(3).

The second argument is equally unfounded. Fees and costs are coexistent with liability. *See* 15 U.S.C. § 1640(a)(3). For the typical TILA loan, a finding of liability on the part of the assignee necessarily precludes good faith. In the case of assignees of HOEPA loans, liability renders innocence altogether irrelevant. *See* 15 U.S.C. § 1641(d) (placing burden of proof upon assignee to show that it could not have known that it was purchasing a HOEPA loan) Because the Plaintiff has alleged assignee liability, it has perforce stated a claim for fees and costs.

**Count V: Claim Objection**

Count V constitutes an objection to the HSBC Proof of Claim. That claim, Plaintiffs argue, is deficient in two respects. First, it alleges that HSBC's servicer has been miscalculating the interest component on that claim. ¶50. Second, HSBC is accused of charging excessive escrow fees, advances, costs and other expenses to the claim. ¶ 51. Here again, HSBC relies on preclusion principles to request dismissal of this count. It argues that Plaintiffs' failure to have raised these issues as a defense to foreclosure bars it from doing so now. HSBC's Brief, 3.

For its part, Plaintiffs agree that principles of preclusion apply, but assert that it is *HSBC's* defense—and not Plaintiffs' claim objection—which should be precluded. They explain that notwithstanding that HSBC has obtained a foreclosure judgment, it has filed a Proof of Claim for an amount based on the *mortgage and note*. *See* Plaintiffs' Sur-Reply, 6. Plaintiffs maintain that this is contrary to the common law principle of merger; i.e., that upon foreclosure, the underlying mortgage merges into the judgment and exists no more. This doctrine has been specifically recognized by the Third Circuit

in *Stendardo v. FNMA*, 991 F.2d 1089, 1095 (3d Cir.1992). Based on that binding authority, Plaintiffs argue that to the extent HSBC is relying on the loan instruments to charge interest and other costs to its Proof of Claim, the claim must be disallowed. Sur-Reply, 10.

The Court finds that much of Plaintiffs' argument is well made but that its interpretation of *Stendardo* is incomplete. Certainly, issues regarding the amount due on the mortgage or whether interest was accruing as provided under the note should have been litigated in the state court. If they were not at that time, then they may not be raised now. On the other hand, the *Stendardo* Court recognized an exception to the merger doctrine. It explained that "[p]arties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *Id.*; *accord Cardiello v. Casale (In re Phillips Group, Inc.)*, 382 B.R. 876, 883 (Bankr.W.D.Pa. 2008) This means that HSBC may be entitled to charge a rate of interest other than the legal rate *if the loan documents so provide*. Likewise, the note may have provided for the continued assessment of fees, costs and other charges. However, these documents are not part of this record. Therefore, the Court cannot yet say whether the challenge as to interest and other charges is precluded by the state court judgment. On that basis, the Court finds that Count V survives dismissal.

**Count VI: Breach of Contract**

The last count, however, is a different matter. While its factual predicate shares

14

with Count V the allegation that interest was not properly calculated, it falters on the relief requested.  It asks for a full accounting from the servicer and "reappl[ication of] all payments in a manner that conforms to the terms of the note and mortgage.]  *See* Amended Complaint, Count VI, Prayer.  Given that this is an action in assumpsit, there must be an underlying agreement.  But that instrument—as Plaintiff maintained with regard to the Proof of Claim—merged into a judgment in foreclosure and exists no more.  The time for raising contract-based claims was in response to the complaint in foreclosure.  Indeed, the applicable rules of procedure require a foreclosure complaint to set forth, inter alia, "a specific averment of default," and "an itemized statement of the amount due."  *See* Pa.R.C.P. 1147(a)(4), (a)(5)  Likewise, counterclaims in foreclosure proceedings are limited to claims which "arise from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose."  Pa.R.C.P. 1148.  Plaintiffs' allegation that the amount of interest stated as due was not correct should have been raised as a counterclaim.  Plaintiffs failed to do so and the mortgage note has now merged into the foreclosure judgment.  *See Stendardo, supra*; *see also Younger v. Fleet Bank, N.A. (In re A & P Divers. Tech. Realty, Inc.)*, 467 F.3d 337, 343 (3d Cir. 2006) (noting that lending agreements, i.e., the mortgage *and note*, merge into the foreclosure judgment); *Price v. Amboy National Bank (In re Price)*, 361 B.R. 68, 77 (Bankr.D.N.J.2007) (stating that lending agreements merge into final judgment of foreclosure); *In re Miles*, 400 B.R. 441, 444 (Bankr.E.D.Pa.) (acknowledging merger doctrine with regard to mortgage foreclosure)

      Nor is the *Stendardo* merger exception applicable here.  Again, that exception

recognized the parties to an agreement might agree that a provision survive judgment or foreclosure. In such a case, a contract term which allowed for post judgment interest or taxes could be enforced without altering the underlying judgment. But the relief requested in Count VI goes well beyond that. The Plaintiffs would have the Court return the parties to the *status quo ante* the foreclosure judgment; that is, reapply every payment made on the loan, and then determine the amount due. That cannot be reconciled with the interests protected by the *Rooker-Feldman* doctrine. As discussed, *supra*, that doctrine deprives a lower federal district court of jurisdiction to review a federal claim which would essentially negate a prior state court adjudication. For all intents and purposes, that is what Plaintiffs would have the Court do in Count VI. They ask for a determination of what is owed on the mortgage when that very ruling was already made by the state court in the foreclosure proceeding. The Court cannot revisit that issue without infringing upon the state court's act of entering final judgment on a matter within its purview. For that reason, Count VI will be dismissed, but without prejudice.[9]

**Summary**

The Court finds that Counts II through IV state claims under TILA. Likewise, Count V's objection to the HSBC Proof of Claim is viable. Finally, Count VI must be dismissed. Accordingly, HSBC's Motion to Dismiss the Amended Complaint will be

---

[9]At the hearing, Plaintiffs' counsel conceded the weakness of Count VI. He explained that the count's predicates could, however, support an independent claim under state consumer protection law (UDAP) and so sought leave to amend the pleading to state that claim. Transcript, 12. If that is Plaintiffs' intention, then they must proceed accordingly and file a motion for leave to amend.

granted in part and denied in part.

    An appropriate Order follows.

By the Court:

*Stephen Raslavich* (signature)

_____

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>May 6, 2009</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| | : |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-15626 SR |
| | |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| PLAINTIFF(S) | : |
| VS. | : |
| | : |
| HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. | : |
| DEFENDANT(S) | : ADVS. NO. 08-350 |

# ORDER

**AND NOW,** upon consideration of HSBC's Motion to Dismiss, the Plaintiffs' Response there, the parties' briefs, after a hearing held on April 2, 2009, and for the reasons set forth in the foregoing Opinion, it is hereby

**ORDERED** that the Motion is granted as to Count VI, which is dismissed, the Motion is denied as to all other counts.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: May 6, 2009

Counsel for Plaintiff

Montgomery L. Wilson, Esquire
Community Legal Services
2638 North Broad Street
Philadelphia, PA 19104

Counsel for Defendant

Michelle Pearson, Esquire
7228 Baptist RD, #175
Bethel Park, PA 15102

George Conway, Esquire
Office of the United States Trustee
833 Chestnut Street
Suite 500
Philadelphia PA 19106

Nancy Mulvehill, Courtroom Deputy to Judge Raslavich