# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 13 |
| | : |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| | : |
| DEBTOR(S) | : BANKRUPTCY NO. 08-15626 SR |
| RALEIGH BLYTHE AND ROSE CANDELARIO | : |
| | : |
| PLAINTIFF(S) | : |
| VS. | : |
| HSBC BANK USA, N.A., AS TRUSTEE ON BEHALF OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST AND FOR THE REGISTERED HOLDERS OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2005-SD3, ASSET BACKED PASS-THROUGH CERTIFICATES | : |
| | : |
| DEFENDANT(S) | : ADVS. NO. 08-350 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**

Before the Court are two matters: Plaintiffs' Motion for Leave to Amend Complaint and Defendant's Motion for Judgment on the Pleadings. Both of the motions are opposed. After a hearing held on July 29, 2009, the Court took the matters under advisement.[1]

---

[1] As this adversary proceeding seeks to determine the validity, extent or priority of a secured claim, it is within this Court's core jurisdiction. 28 U.S.C. § 157(b)(2)(K).

**Background**

Plaintiffs would amend their Complaint for the second time.[2] In response to the first Amended Complaint, HSBC filed a Motion to Dismiss. This Court's Opinion and Order of May 6, 2009 denied that motion as to all but one count. In response, HSBC filed an Answer to the Amended Complaint and a Motion for Judgment on the Pleadings. Before filing a response to HSBC's Motion, Plaintiffs filed this Motion for Leave to Amend their Complaint. Because allowing amendment would moot any pending motion,[3] the Plaintiffs' request must be taken up first.

*Causes of Action*

The legal theories which the alleged facts support—both old and new—remain much as they were. Formerly, six counts were plead where now eight are set forth. As before, Count I seeks to determine the extent of the HSBC lien. Counts II and III again allege violations of the Home Owners Equity Protection Act[4] (HOEPA). Count IV adds a third HOEPA violation. Count V alleges the same violation of the Truth in Lending Act (TILA) as before. Count VI objects to the HSBC Proof of Claim. The final two counts are new: both allege violations of the Pennsylvania Uniform Trade Practices and

---

[2] This is the first time, however, for which *leave* to amend is requested. The prior amendment was done as a matter of course.

[3] It is black letter law that "an amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit." *Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 276 (3d Cir. 2002).

[4] 15 U.S.C. § 1639, a section of the Truth in Lending Act, 15 U.S.C. 1601 et seq., devoted to certain "high cost" mortgage loans.

Consumer Protection Law, [5] one of which is derivative of a state usury law[6] (Count VII) while the other (Count VIII) alleges an independent violation of the statute.

*Applicable Rule*

Amendment of pleadings is governed by Fed. R.Bankr.P. 7015, which incorporates Fed.R.Civ.P. 15. The rule provides, in pertinent part:

> (a) **Amendments Before Trial**.
> (1) **Amending as a Matter of Course**. A party may amend its pleading once as a matter of course:
> (A) before being served with a responsive pleading; or
> (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
> (2) **Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent *or the court's leave*. The court *should freely give leave when justice so requires.*

Fed.R.Civ.P. 15(a)(1),(2) (2007) (emphasis added). The Supreme Court has made it clear that the application of this presumption is "a mandate to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the policy of trying cases on their merits. *Id.* It also avoids the possibility of the opposing party suffering prejudice or surprise. 6 Wright & Miller, *Fed. Prac. & Proc.*, Civ. 2d § 1474. The precise delineation of when leave should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge. *NAACP v. Harrison*, 907 F.2d 1408, 1417 (3d Cir.1990). This requires the Court to consider the positions of *both* parties and the effect that the request will have on them. Wright &

---

[5] 73 P.S. § 201-1.

[6] 41 P.S. § 401 et seq. (referred to "Act 6")

Miller, *supra* at § 1487.  For that reason, the court may deny a request to amend when the moving party has demonstrated undue delay, bad faith or dilatory motive or where the amendment would prejudice the opposing party.  *See Foman, supra, id.*; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002).  Equally, an amendment will be denied where it is futile.  *Id.*

*HSBC's Objection*

HSBC's objection to Plaintiffs' proposed amendments is limited.  It would "permit the addition of the factual allegations which support Count II as well as the inclusion of Count IV as proposed."  *See* HSBC's Response to Motion to Amend, 2.  As to the remaining counts, HSBC's objection is vague.  It states that the proposed amendment attempts to include claims that "fail as a matter of law" and that "would be futile." *Id.*  Yet when HSBC comes to a particular count, it either provides no argument in support of the objection or the argument offered is based not on futility, but rather, on principles of preclusion.  Given that lack of clarity, it is best for the Court to simply address each count (and objection) in order.

*Count I Stripdown*

Count I seeks to reduce the amount of the HSBC secured claim.  The security for the HSBC claim is a mortgage on the Plaintiffs' home.  The proposed amendment to this count explains — as did its previous iteration — that while this loan is secured by the Plaintiffs' principal residence, it may nonetheless be modified.  The sole change which the proposed amendment makes to this count is to add a paragraph (¶ 56) which explains why the plan may pay HSBC's claim a rate of interest less than the contract

4

rate.

Although it objects to allowing leave to amend this count as proposed, HSBC offers no reasons for its opposition. For its part, the Court observes that § 506 provides that

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).[7] Section 1322 of the Code provides that a Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*...." 11 U.S.C. § 1322(b)(2) (emphasis added). Put more directly, the anti-modification clause bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence. *In re McDonald*, 205 F.3d 606, 609 (3d Cir.2000). That clause, however, is not without exceptions:

> Notwithstanding subsection (b)(2) and applicable non-bankruptcy law—
> …
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security

---

[7]A determination of the validity, extent or priority of a secured claim is initiated via an adversary proceeding. B.R. 7001(2). Thus, Plaintiffs have followed the correct procedure.

> interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2). The Plaintiffs assert that their loan qualifies for this very exception. The last payment on the Plaintiffs' loan from HSBC is due in August 2013; the last payment under their Chapter 13 plan will be made in September 2013. See Plaintiffs' Proposed Amended Complaint, ¶¶ 54, 55. Because the *last loan payment* precedes the *last plan payment*, the Plaintiffs' treatment of HSBC qualifies for the exception to the anti-modification rule of § 1322(b)(2). As a result, the value of the HSBC secured claim may be determined under § 506.

*Count II HOEPA - Failure to Disclose*

No objection is lodged as to this count and so leave to amend it as proposed will be allowed.

*Count III HOEPA - Negative Amortization*

As before, the third count alleges that HSBC has violated the statute's proscription against loans which provide for negative amortization. Where it is different, however, is in its factual premise for the claim. Formerly, it was alleged that HSBC impermissibly applied payments "as if the mortgage loan was a daily interest loan." Amended Complaint, ¶ 42. That, it concluded, resulted in negative amortization in violation of the statute. *Id.,* ¶ 43, 44. The proposed second amendment would change that to state that the loans's terms *per se* resulted in negative amortization. *See* Proposed Second Amendment, ¶ 62. In other words, a HOEPA violation occurred regardless of how HSBC may have applied monthly payments to principal and interest.

*Id.*, ¶ 63.

HSBC maintains that the negative amortization claim is precluded by the Court's May 6 ruling. See Transcript of Hearing, July 29, 2009 (T-), 11. They explain that resolving that claim requires re-application of every monthly payment made since the loan's inception into a principal and interest component. That, they explain, would require reopening of the foreclosure judgment. As a result, they conclude, such a cause of action is precluded under res judicata.

The Court finds that no recalculation of interest and principal payments would be required by the proposed amendment. Here, the negative amortization claim is alleged to exist on the face of the loan. From its inception, the Plaintiffs allege, the loan will necessarily result in the principal balance growing, as opposing to amortizing. To prove that will not require analysis of Plaintiffs' payment history. Thus, no preclusion principle should bar the claim as amended.

That being said, the Court must express some dissatisfaction with what it perceives as legal maneuvering on the part of Plaintiffs' counsel. T-14 Counsel never explained why this new ground for asserting negative amortization was not apparent sooner. T-20. However, given that the case is still at the pleadings stage, the Court would not go so far as to impute bad faith or dilatory motive on Plaintiffs' part. Moreover, this is not an instance of a litigation staking out a completely contrary position after the earlier one failed. And in fairness to Plaintiffs, the newly offered reason for the negative amortization claim is based on the documents (i.e., the note) which is in HSBC's possession. Likewise, discovery has not yet commenced so it cannot be argued that there might be any duplication of effort or resource. In sum, no

7

demonstrable harm is done to HSBC in granting Plaintiffs this latitude. As the case progresses, however, such requests would be judged by a higher standard.

*Count IV HOEPA - Prepayment Penalty*

This Count alleges that HSBC also violated HOEPA by charging a penalty for prepayment. As this count as proposed is not objected to, it may be pleaded in the second amendment.

*Count V - TILA*

This count alleges that the lender violated TILA not in *failing* to give disclosures, but in giving *inaccurate* ones. Simply stated, the Plaintiffs allege that their loan included certain charges in the "amount financed" which should have been disclosed as part of the "finance charge."[8] The sole change to this count in the proposed amendment is to itemize specifically which charges were part of the amount financed when they should have been included in the finance charge. *See* Proposed Amendment, ¶ 70.

HSBC utterly fails to explain why this proposed change should not be allowed. This is especially curious given that its motion for judgment on the pleadings on the first Amended Complaint did not challenge the TILA claim. For its part, the Court cannot see how the amendment—either on this record or on its face—might fail. Our previous opinion explained how consumer lending claims are not precluded by a prior foreclosure ruling. Equally, alleging that a lender understated the finance charge is a common TILA violation. Consumer lenders are required to disclose the "amount financed" as well as the "finance charge." *See* 15 U.S.C. § 1638(a)(2), (3). Exactly what goes into the

---

[8]Both terms are specifically defined under TILA. *See* 15 U.S.C. §§ 1605(a) (defining "finance charge"), 1638(a)(2)(A) (defining "amount financed")

"finance charge" is explained at § 1605 of TILA and § 226.4 of Regulation Z.[9]  It defines that term as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a).  If the amount of the finance charge is inaccurate, then the creditor has not "clearly and conspicuously" disclosed the cost of credit to the consumer as TILA requires.[10] *See In re Sterten,* 546 F.3d 278, 280 (3d Cir. 2008) (explaining that lender may be liable under TILA for failing to disclose finance charge accurately)  As a result, the Court finds that proposed Count V states a claim under TILA.  The amendment as proposed to that count will be allowed.

*Count VI - Objection to Claim*

HSBC next challenges the Plaintiffs' request to amend its objection to HSBC's Proof of Claim.[11]  As proposed, the amendment relies on the merger doctrine to disallow certain fees and from the claim as well as to limit the rate of interest chargeable to it. *See* Proposed Second Amendment ¶¶ 75-78.  HSBC implicitly concedes that post-judgment fees and costs are not recoverable.  T-39,40.  As to interest, however, it steadfastly asserts its right to interest at the contract rate.  It incorporates what is set forth in its Motion for Judgment on the Pleadings.  There, HSBC relies on the exception to the merger doctrine which the Third Circuit recognized in *Stendardo*.  That exception

---

[9] Its interpretative regulation drafted by the Federal Trade Commission.

[10] The statute and its interpretative regulation tolerate a *de minimis* level of inaccuracy of $100.  *See* 15 U.S.C. § 1605(f); 12 C.F.R. § 226.18(d)(1).  The proposed amendment alleges understatement of the finance charge in excess of that threshold amount.  *See* ¶ 70.

[11] HSBC appears to have misidentified this Count. It refers to Count V as the objection to the HSBC Claim, but that count is listed as Count VI.  Count V alleges a TILA violation.  *See* Proposed Second Amended Complaint.

allowed for the possibility that the contract rate of interest might survive the foreclosure judgment if the parties had so agreed beforehand. *See* Motion for Judgment on the Pleadings, 4.

Whether HSBC is correct on the this point however is a question of proof, and not pleading. And at the pleadings stage, what is alleged is presumed true for purposes of judging legal viability. It would be premature then at this stage for the Court to consider matters beyond what is alleged. And by the same token, the Court makes no finding as to Plaintiffs' contention that they may pay HSBC interest of not more than 7% on its Proof of Claim. That determination likewise cannot be determined in this context. For present purposes, the Court need only judge the sufficiency of the amendment. The Court finds that based on what is proposed in Count VI is enough to state an objection to the HSBC Proof of Claim.

*Counts VII and VIII - Act 6/UDAP*

The last two counts are new and charge HSBC with violating the Uniform Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 (UDAP).[12] The violations are alleged to have occurred in two ways, one derivative and the other direct. First, Count VII alleges that the loan's prepayment penalty is a violation of the state usury statute (referred to as "Act 6"), 41 P.S. § 405. That, in turn, has been held to constitute a *per*

---

[12]Like most American jurisdictions, Pennsylvania has enacted a statute which is generically known as a law prohibiting and punishing "*u*nfair or *d*eceptive *a*cts and *p*ractices," i.e., a UDAP statute, specifically the Unfair Trade Practices and Consumer Protection law, 73 P.S. § 201-1, et seq. (referred to hereafter as "UDAP").

*se* violation of UDAP.[13]  Second, HSBC is accused of having misrepresented the material terms of the loan in order to induce the Plaintiffs to take out a loan that was unfavorable to them.  *See* 73 P.S. § 201-2(4)(v), (xxi) (listing as fraudulent or deceptive acts the "represent[ation] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" and "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.")

HSBC's objection to these counts is based on the same doctrines of preclusion and comity on which it relied before.  It contends that these counts "would purport to add back in additional state law claims attacking the state court foreclosure judgment in violation of the preclusion and *Rooker-Feldman* doctrines."  Response, 2  That is completely without legal basis.  The Court's earlier opinion discussed the preclusive reach of a foreclosure judgment in Pennsylvania.  Such a proceeding is *in rem* and thus the extent of matters which may be brought in response to it is limited.  For that reason, the Court upheld Plaintiffs' right to raise TILA and HOEPA claims after the foreclosure judgment.  There is no reason why the UDAP claims, also *in personam* and also consumer protection-based, would be precluded in this context.

---

[13]This is established law.  A vicarious violation of UDAP has been held to have occurred where a different consumer protection statute is violated.  *In re Wylie*, 1991 WL 42236 *4 (E.D.Pa.) ("UDAP's general catch-all provision also covers violations of Pennsylvania's various consumer protection statutes, many of which do not themselves provide for private causes of action."); *see, e.g., Safeguard Investment Corp. v. Commonwealth,* 44 Pa.Cmwlth. 417, 419, 404 A.2d 720, 721 (1979) (holding that violation of Act 6 would support an action under UDAP); *See In re Milbourne*, 108 B.R. 522, 544 (Bankr.E.D.Pa.1989) ("a violation of TILA may also constitute a violation of UDAP"); *and see also In re Barker*, 251 B.R. 250, 260 (Bankr.E.D.Pa.2000) ("Any violations of Pennsylvania's Credit Services Act (CSA) are deemed to be violations of the state's UDAP statute")

Likewise, neither is the *Rooker-Feldman*[14] doctrine implicated. That doctrine bars "inferior" federal courts from sitting as appellate courts for state judgments. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir.2005) Specifically, a claim is barred if (1) the federal claim was actually litigated in state court prior to the filing of the federal action or (2) if the federal claim is inextricably intertwined with the state adjudication meaning that federal relief can only be predicated upon a conviction that the state court was wrong. *Id.* A federal claim is "inextricably intertwined" with the state court adjudication when the federal court must take an action that would negate the state court's judgment. Id., at 581. It is grounded in principles of federalism and designed to serve two primary functions: It furthers the interest of finality in court decisions, and ensures that federal courts show proper respect for their state counterparts. *See Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993).

Nothing about the UDAP counts contravenes the interests protected by the *Rooker-Feldman* doctrine. Contrary to HSBC's premise, those claims do no violence to the state foreclosure judgment. To reiterate, any ruling on the UDAP claims in Plaintiffs' favor will not alter the result of the foreclosure ruling. The former seeks damages while the latter seeks a determination of rights in specific property. HSBC may rely on that ruling as final. Allowing this amendment would not compromise any interests of federalism.

## Summary

The Court finds that the circumstances support the granting of leave to Plaintiffs

---

[14]*See D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

to amend their complaint for a second time. The proposed amendments are neither futile nor precluded by what has already occurred in state court. As a result of this determination, HSBC's Motion for Judgment on the Pleadings is rendered moot.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>August 25, 2009</u>